**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**AMANDA HANSON AND
NICHOLAS HANSON,**

      **Plaintiffs,**

**v.**                               **CIVIL ACTION NO. 2:17-cv-03691
Judge Thomas E. Johnston**

**AMERIHOME MORTGAGE COMPANY, LLC,
and JOHN DOE HOLDER,**

      **Defendants.**

**MEMORANDUM IN OPPOSITION OF DEFENDANT
AMERIHOME MORTGAGE'S MOTION TO DISMISS**

This is a wrongful foreclosure case arising out of loan servicer abuse by Defendant Amerihome Mortgage Company, LLC ("Amerihome"). Defendant Amerihome failed to consider the Plaintiffs for appropriate loss mitigation mandated by the United States Department of Housing and Urban Development regulations governing treatment of borrowers in FHA-insured mortgage loans. Amerihome referred the loan to foreclosure in breach of the parties' agreement and HUD regulations. Defendant Amerihome has filed a Motion to Dismiss the Hansons' Complaint. For the reasons stated more fully below, Amerihome's motion should be denied in its entirety.

## I.      STATEMENT OF THE FACTS

Plaintiffs are residents of Fayetteville, West Virginia and are veterans of the armed forces. Compl. ¶ 2. Neither are sophisticated in financial matters. *Id.*

On or about October 21, 2014, Plaintiffs entered into a home mortgage loan in the principal amount of $194,200.00 with Victorian Finance, LLC to purchase a home in Fayetteville, West Virginia. *Id.* ¶ 5. The deed of trust incorporates the Regulations of the HUD Secretary, and further

states that acceleration or foreclosure is not authorized unless in accordance with said regulations. *Id.* ¶ 6; *see also* Deed of Trust ¶ 9, attached as Ex. A.

On or around November 11, 2014, the servicing rights of the loan were transferred to Defendant Amerihome.  *Id.* ¶ 7.  On or around December 21, 2014, Defendant Amerihome designated LoanCare, LLC as its subservicer on the loan.  *Id.*  On or around April 2, 2015, Defendant Amerihome replaced LoanCare, LLC as its subservicer with Cenlar FSB.  *Id.*  At some point on or around October 14, 2016, for reasons unclear, Defendant Amerihome began once again servicing Plaintiffs' loan directly.  *Id.* ¶ 8.

Although the Hansons experienced a decrease in household income in or around February 2016, when Mr. Hanson was laid off from his job, they continued making payments for several months when they had depleted their savings and they could no longer afford to continue making the payments on their limited income.  *Id.* ¶ 9.  Plaintiffs contacted Defendant Amerihome's then-subservicer Cenlar in or around September 2016, to inquire about ways in which they could work with Cenlar and Amerihome to save their home.  *Id.* ¶ 10.  Defendant Amerihome or its subservicer Cenlar informed Plaintiffs that they could apply for loss mitigation.  *Id.*

Defendant Amerihome or its subservicer Cenlar sent Plaintiffs an initial loss mitigation packet.  *Id.*  Plaintiffs diligently filled out their loss mitigation paperwork and sent it to Defendant.

On or around November 2016, Mr. Hanson went back to work, although at a significantly decreased income.  *Id.* ¶ 11.  Plaintiffs frequently contacted Defendant Amerihome to check on the status of the application; time and time again, they were informed their loss mitigation packet was missing information and that Defendant had sent letters requesting that information.

*Id.* ¶  12.   When Plaintiffs received letters about missing documentation, they provided the information timely.  *Id.*  Plaintiffs continued to respond to Defendant Amerihome's requests for months.  *Id.*

On or around January 30, 2017, Plaintiffs received a letter stating that documentation was missing.  Included in the letter was a paragraph stating: "Lack of receiving the outstanding information by the date referenced may make you ineligible for the home affordable modification program in the future as well."  *Id.*   On or around February 15, 2017, Plaintiffs received a letter stating that Defendant Amerihome was "discontinuing" the loss mitigation process because Plaintiffs had not provided timely information.  *Id.* ¶ 14.  The letter did not state that Plaintiffs had been denied for loss mitigation options.  *Id.*  The letter did not offer Plaintiffs any opportunity to appeal the "discontinuation" of the loss mitigation process.  *Id.*

On March 4, 2017, Plaintiffs received a Notice of Trustee's sale for the property, scheduled for March 24, 2017.  *Id.* ¶ 15.  The Defendant only agreed to cancel the sale after Plaintiffs notified the Trustee of their ongoing servicing issues.  *Id.*

## II.    STATEMENT OF THE CASE

On the basis of the above-stated facts, Plaintiffs filed a Complaint in the Circuit Court of Fayette County on June 5, 2017 against Defendants Amerihome and John Doe Holder.[1]  Plaintiffs' Complaint states two causes of action against all Defendants—(1) misrepresentations and unconscionable conduct, and (2) breach of contract. Additionally, Plaintiffs' complaint states an additional count for tortious interference with contract against Defendant Amerihome.   On July 24, Defendant Amerihome removed this case to the United States District Court for the Southern

---

[1] John Doe Holder is the as yet unascertained holder of Plaintiffs' mortgage. It may be added once the identity of the holder is known.

3

District of West Virginia.  Doc. 1.  Defendant Amerihome now moves to dismiss the entirety of the Complaint.

## III.    ARGUMENT

### A.    Standard of Review

Defendant Amerihome moves to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiffs have not met the pleading standard established by Rule 8 of the Federal Rules.  Rule 8 requires simply "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In considering a motion to dismiss pursuant to Rule 8, it is a basic tenet that a court must accept all of the factual allegations in the complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nemet Chevrolet, Ltd. v. Consumerafairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  As the Supreme Court has clarified, the claim stated in a complaint must be "plausible on its face."  *Iqbal*, 556 U.S. at 678.  However, "[t]he plausibility standard is not akin to a 'probability requirement,'" and "does not require 'detailed factual allegations.;"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Indeed, "[w]hen there are well-pleaded factual allegatins, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  In conducting its analysis, the court must "draw all reasonable inferences in favor of the plaintiff."  *Nemet Chevrolet*, 591 F.3d at 253.  Because Plaintiffs have clearly and adequately pleaded their claims under this standard, Plaintiffs respectfully request that the motion to dismiss be denied.

### B.    Plaintiffs Properly Stated Claims Under the West Virginia
### Consumer Credit and Protection Act

Amerihome's arguments that it could not have made misrepresentations deemed unlawful under West Virginia Code § 46A-2-127 nor engaged in unconscionable and unfair conduct in

violation of West Virginia Code § 46A-2-128, Def. Mem. 4, misconstrue the scope of the statutory framework of the West Virginia Consumer Protection Act ("WVCCPA").

In support of its argument, Amerihome cites to § 46A-2-127 and asserts that because the statute prohibits a debt collector from using misleading representations "to collect or attempt to collect claims," its conduct in any loss mitigation efforts does not run afoul of the statute. Def. Mem. 4. Amerihome curiously leaves out key phrasing in § 46A-2-127 that bears directly on this case. The complete sentence, does not stop at "claims"; rather, it states: "[n]o debt collector shall use any fraudulent, deceptive or misleading misrepresentation or means to collect or attempt to collect claims or *to obtain information concerning consumers*." (Emphasis added.) While Amerihome is correct in its assertion that § 46A-2-127 proscribes conduct relating to the collection of a debt, DefMem. 5, its failure to consider the complete language of the statute renders its analysis of the scope of the statute with regards to its conduct in this case incomplete at best.

West Virginia law does not take such a narrow interpretation of the statutory prohibition on fraudulent, deceptive, or misleading misrepresentations as Amerihome. Indeed, this Court has held previously that conduct beyond explicitly demanding payment from a consumer may be considered a violation of § 46A-2-127. For example, in *Koontz v. Wells Fargo*, the United States District Court for the Southern District of West Virginia found that allegations relating to the Defendant servicer failing to appropriately consider the consumer for loan assistance could properly be a claim under § 46A-2-127. *Koontz*, No. 2:10-CV-00864, 2011 WL 1297519, at *6 (S.D.W. Va. Mar. 31, 2011) ("In addition, to the extent that Plaintiff alleges Wells Fargo misrepresented that it would reconsider her for a loan modification, and thereby obtained financial information for a second modification application, the complaint adequately sets forth a claim pursuant to W. Va. Code § 46A–2–127.") (*see* attached, Ex. B.). *See also McFarland v. Wells*

5

*Fargo Bank, N.A.*, 19 F. Supp. 3d 663, 677 (S.D.W. Va. 2014), *vacated in part on other grounds*, 810 F.3d 273 (4th Cir. 2016) (citing cases); *Petty v. Countrywide Home Loans, Inc.*, No. 3:12-CV-6677, 2013 WL 1837932, at *13 (S.D.W. Va. May 1, 2013).

In the instant case, Amerihome instructed the Plaintiffs to complete a loss mitigation application and supply significant detailed information about their financial circumstances and ability to pay the mortgage.  Compl. ¶¶ 10-15.  For approximately six months, the Plaintiffs were in frequent contact with Amerihome supplying additional documents and information in the hopes that Amerihome would follow through on its promise of assistance.  *Id.*  Yet, Amerihome's promise of assistance was illusory. Despite the repeated attempts by the Plaintiffs to satisfy Amerihome's documentary demands, Amerihome summarily and unilaterally "discontinued" the loss mitigation process and proceeded to notice the foreclosure sale of Plaintiffs' home.  *Id.* Accordingly, Amerihome's conduct falls directly under the purview of § 46A-2-127 as this Court, courts around West Virginia, and the Fourth Circuit have consistently held.

Similarly, Amerihome's argument that its conduct did not violate § 46A-2-128 is also without merit.  Section 46A-2-128 outlines conduct in debt collection deemed to be unfair and unconscionable.  *See* § 46A-2-128.   However, what conduct may constitute unfair and unconscionable means is not limited to the examples outlined in the statute.  *See id.* ("Without limiting the general application of the foregoing, the following conduct is deemed to violate this section . . .").   When Amerihome directed its appointed trustee to schedule a sale while simultaneously representing to Plaintiffs it was considering their application for assistance, it acted in furtherance of foreclosure, which constitutes debt collection activity.  *See McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 361 (4th Cir. 2016) ("pursuing foreclosure constituted a step in collecting debt and thus debt collection activity"); *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d

373, 376 (4th Cir. 2006).   Plaintiffs' claims for misrepresentation and unconscionable conduct in loan servicing clearly satisfy the statute because they are linked to either Defendant Amerihome's attempts to obtain information about Plaintiffs through providing a loan modification application and/or its attempt to collect on a debt through foreclosure. *See Koontz*, 2011 WL 1297519, at *6; *Nowlan v. JP Morgan Chase Bank, N.A.*, Civ. Action No. 2:11-CV-00404, 2012 WL 1029315, at *6 (S.D.W. Va. Mar. 26, 2012); *see also Brown v. Card Serv. Center*, 464 F. 3d 450 (3d. Cir. 2006) (allowing claim under identical federal prohibition); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2nd Cir. 1993) (same).   Whether or not Amerihome's conduct is unconscionable and violative of § 46A-2-128 is a question of fact, not law, and it is an issue that should remain for a jury to decide. Under a Rule 12(b)(6) motion to dismiss, the veracity of the allegations in the complaint must be assumed. Accordingly, the Plaintiffs have met the threshold requirement of adequately alleging facts which a reasonable trier of fact could find unconscionable. Amerihome's motion to dismiss as to Count I should be denied.

### C.      Plaintiffs Properly Stated a Claim for Breach of Contract

Defendant Amerihome asserts that Plaintiffs have failed to assert a claim for breach of contract.  First, Defendant argues that it is not bound by the loan and deed of trust because, as the loan's servicer, it was not a party to the contract. Def. Mem. 6-7.  Curiously, Defendant makes no attempt to reconcile its argument in support of dismissing Counts II with its argument in support of dismissing Count III. It first argues that Amerihome is not a party to the contract[2] and it should therefore be shielded from liability for breach of contract claims.  Def. Mem. 6-7. It then argues that it is an agent of the servicer, and therefore cannot have interfered with the contract between

---

[2] Implicit in this argument is that Amerihome is also asserting it does not have privity with a party of the contract.

John Doe Holder and Plaintiffs. *Id.* 7-8. Defendant seeks to have it both ways and simply never be liable for its mistreatment of consumers.

Further, Defendant fails entirely to address that Count II is also directed at Defendant John Doe Holder, the holder of the loan and, thus, party to the contract with Plaintiffs. Furthermore, "mortgage servicers, whether holders of the mortgage note or simply agents of the holder of the note, may be liable for contractual breaches if the facts demonstrate the existence of a contract." *Cortinas v. Nevada Housing*, No. 2:11–CV–01480, 2011 WL 6936340, *5 (D. Nev. Dec. 30, 2011); *see also Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F. Supp.2d 1103, 1123 (D. Colo. 2010) (holding that a claim for breach of contract could proceed against the loan servicer under a theory of "direct liability . . . , liability as [the holder's] agent, [or] liability for conspiracy."); *Walters v. Fidelity Mortg. of CA*, 730 F. Supp.2d 1185, 1200 (E.D. Cal. 2010); *Williams v. Wells Fargo Bank N.A.*, No. 11–21233–CIV, 2011 WL 4901346, at *4 (S.D. Fla. Oct. 14, 2011); *see also Hashop v. Fed. Home Loan Mortgage Corp.*, 171 F.R.D. 208 (N.D. Ill. 1997).

Plaintiffs have properly pleaded facts to demonstrate that Amerihome serviced and continues to service the loan. *See id.* ¶¶ 7-18. Plaintiffs have pleaded that the Deed of Trust controls what discretion Defendants have to modify the contract. *Id.* ¶¶ 25-26. Plaintiffs pleaded that Amerihome, and not John Doe Holder, was the entity with which they had communications about modifying the contract through the loss mitigation process. *See id.* ¶¶ 8-18. Accepting all the facts in the Complaint as true, Plaintiffs have pleaded facts sufficient to make a plausible claim that Amerihome acted as the agent of John Doe Holder and can therefore be liable for breaching the Deed of Trust agreement. Therefore, Amerihome's motion to dismiss Count II of the Complaint should be denied.

8

### C.     Plaintiffs Properly Stated a Claim for Tortious Interference of Contract

Alternatively, if this Court were to find that Defendant Amerihome is not an agent of the holder who can be held liable for breach of the contract, it is clear that Defendant Amerihome shoulders liability for its tortious interference in that relationship between Plaintiffs and the holder of their loan.  Plaintiffs' Count III asserts a claim for Defendant's tortious interference with the contract between Plaintiffs and the loan holder, John Doe Holder.  The elements of this claim are: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectance; (3) proof that the interference caused the harm sustained; and (4) damages."  Syl. pt. 5, *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395 (W. Va. 2008) (quoting syl. pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166 (1983)).  Plaintiffs have pleaded facts supporting each of these elements. First, Plaintiffs pleaded that a contract—the loan and the deed of trust—exists between them and the loan's holder, John Doe Holder.  Compl. ¶ 32.  Plaintiffs further assert that a party outside that relationship—Defendant Amerihome—intentionally interfered with the contract "by not appropriately considering Plaintiffs for all loss mitigation options otherwise available to Plaintiffs because the loan is held by another entity."  *Id.* ¶ 33.  More specifically, Defendant Amerihome interfered with the relationship between Plaintiffs and their loan holder by negligently prolonging and mishandling the loss mitigation process, by seeking to foreclose on the Plaintiffs' home while they had submitted a loss mitigation application and in contravention of the terms of the Deed of Trust, and by making representations regarding the Plaintiffs' ability to receive loss mitigation assistance that dissuaded Plaintiffs from taking alternative steps to make payment on their mortgage loan.  *Id.* ¶ 10-14.  Finally, Plaintiffs assert that Defendant's interference caused them

damage by causing substantial and unaffordable arrears to accrue on the loan, thus making foreclosure likely, damaging both Plaintiffs and John Doe Holder.  *Id.* ¶ 35.

Defendant Amerihome offers nothing beyond a cursory argument to the contrary, simply stating that it is an agent for John Doe Holder and can therefore not be liable for interfering with a contract of its principal.  Def. Mem. 8.  (Again, this is inexplicably in complete contrast to its assertion that it is *not* an agent in order to avoid liability under Count II for breach of contract.  *See* Def. Mem. 6-7.)  However, an agent may be liable for tortious interference if it acted outside the scope of the agency relationship.  *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008) (explaining that a tortious interference claim could have survived summary judgment if the plaintiffs had presented evidence that the actors "were acting outside the scope of their employment").  Indeed, courts have regularly upheld tortious interference claims in nearly identical circumstances.  *See Parker v. BAC Home Loans Servicing LP*, 831 F.Supp.2d 88, 92-93 (D.D.C. 2011) (holding that plaintiff stated claim for tortious interference with contract when loan servicer refused to apply payments to account, thus placing homeowner in default); *see also Nash v. Green Tree Servicing, LLC*, 943 F.Supp.2d 640, 647-48 (E.D. Va. 2013) (denying summary judgment on tortious interference claim against loan servicer, where holder was Fannie Mae); *Patrick v. PHH Mortg. Corp.*, 937 F.Supp.2d 773, 792-93 (N.D.W. Va. 2013) (denying servicer's motion to dismiss tortious interference claim); *Walters v. Fidelity Mortg. Corp. of Cal.*, 730 F.Supp.2d 1185, 1210-11 (E.D. Cal. 2010) (same).  The question of the relationship between John Doe Holder and Amerihome is to be left to the jury, and Plaintiffs have sufficiently pleaded a claim for tortious interference of contract.

## CONCLUSION

Plaintiffs have adequately pleaded all elements of their claims against Defendant Amerihome. Plaintiffs therefore respectfully request that the Court deny Defendant Amerihome's motion to dismiss.

**AMANDA AND NICHOLAS HANSON,**
**By Counsel.**

/s/ Colten Fleu_____
Colten Fleu (WV Bar No. 12079)
Loree Stark (WV Bar No. 12936)
Mountain State Justice, Inc.
1031 Quarrier St., Suite 200
Charleston, WV 25301
(304) 344-3144
(304) 344-3145 (fax)
loree@msjlaw.org

## CERTIFICATE OF SERVICE

I, Loree Stark, counsel for Plaintiffs, do hereby certify that on the 10th day of August, 2017, I electronically filed this *Certificate of Service* for *Memorandum in Opposition of Defendant Amerihome Mortgage's Motion to Dismiss* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

J. Mark Adkins, Esq.
Andrew C. Robey, Esq.
Bowles Rice LLP
P O Box 1386
Charleston, WV 25325-1386

and by placing a true and exact copy of the same in an envelope, properly addressed with postage fully paid and depositing the same in the U.S. Mail on this date, to the addresses listed above.

/s/ Loree Stark_____
Loree Stark (WV Bar No. 12936)