Loan No: 1409490800
Borrower: NICHOLAS HANSON

**THIS IS A TRUE CERTIFIED COPY OF THE ORIGINAL DOCUMENT**

Kelvin E. Holliday
FAYETTE County 11:53:38 AM
Instrument No 2014013076
Date Recorded 10/22/2014
Document Type TD
Pages Recorded 9
Book-Page    938-415
Recording Fee $15.00
Additional     $5.00

Return to: VICTORIAN FINANCE, LLC
ATTENTION: POST CLOSING DEPARTMENT
212 WASHINGTON AVE., STE 300
BRIDGEVILLE, PA 15017

[Space Above This Line For Recording Data]

FHA Case No.
571-1276197 703

## DEED OF TRUST

MIN: 100622600000524945

THIS DEED OF TRUST ("Security Instrument") is made on the 21st day of October, 2014.
The trustor is NICHOLAS HANSON AND AMANDA HANSON , HUSBAND AND WIFE ("Borrower"), and whose mailing address is 2 MOUNTAINEER WAY, FAYETTEVILLE, WEST VIRGINIA 25840.
The trustee is JESSER LAW FIRM, PLLC, whose residence address is 701 LIPPS ROAD, LEWISBURG, WV 24901 FAYETTE County, West Virginia ("Trustee").
The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. VICTORIAN FINANCE, LLC ("Lender") is organized and existing under the laws of the COMMONWEALTH OF PENNSYLVANIA, and has an address of 212 WASHINGTON AVE, STE 300, BRIDGEVILLE, PA 15017.
Borrower owes Lender the principal sum of ONE HUNDRED NINETY-FOUR THOUSAND TWO HUNDRED FORTY and NO/100-----Dollars (U.S. $ 194,240.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on November 1, 2044. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in FAYETTE County, West Virginia:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 2 MOUNTAINEER WAY, [Street] FAYETTEVILLE, [City]
West Virginia  25840 [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**WEST VIRGINIA FHA DEED OF TRUST**   11/13   (Page 1 of 4 Pages)

P+1409490800+9079+01+06+WVFHADT


EXHIBIT A

Loan No: 1409490600          Data ID: 723

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**WEST VIRGINIA FHA DEED OF TRUST**      11/13      (Page 2 of 6 Pages)

P+1409490600+9079+02+06+WVFHADT

Loan No: 1409490800  Data ID: 723

**WEST VIRGINIA FHA DEED OF TRUST**  11/13  (Page 3 of 5 Pages)

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
  (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
  (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
  (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
  (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 90 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 90 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

P+1409490800+9079+03+06+WVFHADT

Loan No: 1409490800

Data ID: 723

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give Borrower, in the manner provided in paragraph 13, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Borrower hereby waives personal service of notice of any sale made hereunder, upon Borrower, its devisees, agents, successors or assigns, and also waives the posting of notice of sale at the courthouse. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's fees as permitted by applicable law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In the event that foreclosure proceedings are instituted hereunder but are not completed, Trustee shall be reimbursed for all costs and expenses incurred by it in commencing such proceedings; and all costs and expenses so incurred by Trustee, together with interest thereon until paid at the Note default rate shall be and become a part of the obligations secured hereby and shall be collectible as such.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Beneficiary's Address.** The beneficial owner and holder of the Note at the time of execution and delivery hereof is Lender, whose residence address is stated on the first page of this Security Instrument.

21. **Attorneys' Fees.** The provisions in this Security Instrument for Borrower to pay "attorneys' fees", including those in paragraphs 7 and 10, shall be void.

22. **Notice of Trustee's Sale.** Any notice of other liens which may be given to Lender pursuant to W. Va. Code § 38-1-4, shall be effective upon the receipt of such notice, in writing, through the regular United States mail, postage prepaid, addressed to Lender at its address set forth on the face of this Security Instrument.

**WEST VIRGINIA FHA DEED OF TRUST**　　　　　　　　　　　　　　　　　　　　　11/13　　(Page 4 of 6 Pages)

P+1409490800+9079+04+06+WVFHADT

Loan No: 1409490800  Data ID: 723

A copy of any notice of Trustee's sale under this Security Instrument shall be served on Borrower by certified mail, return receipt requested, directed to Borrower at the address stated above or such other address given to Lender in writing by Borrower, subsequent to the execution and delivery of this Security Instrument.

23. Trustees and Substitution of Trustees. It is hereby expressly covenanted and agreed to all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created. Upon such appointment, either with or without a conveyance to said substituted Trustee or Trustees by the Trustees herein named, or by any substituted Trustee in case the said right of appointment is exercised more than once, the new and substituted Trustee or Trustees in each instance shall be vested with all the rights, titles, interests, powers, duties and trusts in the premises which are vested in and conferred upon the Trustees herein named; and such new and substituted Trustee or Trustees shall be considered the successors and assigns of the Trustees who are named herein within the meaning of this Security Instrument, and substituted in their place and stead. Each such appointment and substitution shall be evidenced by an instrument in writing which shall recite the parties to, and the book and page of record of, this Security Instrument, and the description of the real property herein described, which instrument, executed and acknowledged by Lender and recorded in the office of the Clerk of the County Commission of the County wherein the Property is situate, shall be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, and notice of such proper substitution and appointment to all parties in interest.

The Trustees, or either of them or the survivor thereof, may act in the execution of this trust and in the event either of the Trustees shall act alone, the authority and power of the Trustee so acting shall be as full and complete as if the powers and authority granted to the Trustees herein jointly had been granted to such Trustee alone. Either or both of the Trustees are hereby authorized to act by agent or attorney in the execution of this trust, and it shall not be necessary for any Trustee to be present in person at any foreclosure sale.

23. Waiver of Homestead Exemption. Borrower hereby waives all right of homestead exemption in the Property.

24. Lender's Purchase of Property Insurance. Unless Borrower provides Lender with evidence of the insurance coverage required and described above, Lender may purchase insurance at Borrower's expense to protect its interest in Borrower's Property. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Property. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by this Security Instrument. If Lender purchases insurance for the Property, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own. If Borrower provides proof of insurance to Lender and that insurance meets Lender's requirements, then Lender will cancel the insurance that Lender purchased. Borrower may be entitled to a refund of unearned premiums.

25. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider  ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider
☐ Other [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

..................................................(Seal)
NICHOLAS HANSON —Borrower

..................................................(Seal)
AMANDA HANSON —Borrower

WEST VIRGINIA FHA DEED OF TRUST      11/13      (Page 5 of 6 Pages)

P+1409490800+5079+05+06+WVFHADT

Loan No: 1409490800          Date ID: 723

[Space Below This Line For Acknowledgment]

State of WEST VIRGINIA §
County of Fayette §

This record was acknowledged before me on Oct 21, 2014 by NICHOLAS HANSON AND AMANDA HANSON.

Signature of notarial officer: _Barbara L Jennings_
Stamp (if required):
Title of office: Notary Public
My commission expires: April 6, 2024

**OFFICIAL SEAL**
Notary Public, State of West Virginia
**BARBARA L JENNINGS**
130 Daniels Street
Fayetteville, WV 25840
My commission expires April 8, 2024

Prepared by: Middleberg Riddle Group
717 N. Harwood, Suite 1600
Dallas, TX 75201

Loan Originator Organization: VICTORIAN FINANCE, LLC
NMLSR ID: 50635
Individual Loan Originator: PAMELA JENNETTE ISTRATE
NMLSR ID: 383240

**WEST VIRGINIA FHA DEED OF TRUST**     11/13     (Page 8 of 8 Pages)

P+1409490800+8079+08+08+WVFHADT

Loan No: 1409490800  
Borrower: NICHOLAS HANSON

Data ID: 723

## LEGAL DESCRIPTION

Provide legal description here. Attach to the document to be recorded and file as one instrument.

SEE ATTACHED LEGAL DESCRIPTION



P+1409490800+9079+01+01+LEGLDESC

EXHIBIT "A"
NICHOLAS HANSON & AMANDA HANSON

**TRACT I**
BEGINNING at a point, a rebar set on the western most exterior boundary line of the Woodgate property bearing N 22 degrees 45' W 62.03 feet from a T-Rail found; thence leaving the western most exterior boundary line of the Woodgate property and running N 48 degrees 01 E 111.64 feet to a point, a rebar set; thence N 35 degrees 40' E 133.90 feet to a point, an iron pin found, common corner to Lot 44; thence with common line of Lot 44, N 47 degrees 30' W 76.66 feet to a point, a rebar set on the right of way line of Lane Lane, a common corner to Lot 44; thence leaving the common line to Lot 44 and running with the right of way line of Lane Lane with a clockwise circle 54.78 feet long with a radius of 35.00 feet and having a chord of S 85 degrees 09' W 49.36 feet to a point, a rebar set on the right of way line of Lane Lane, common corner to Lot 42; thence leaving the right of way line of Lane Lane and running with the common line to Lot 42, S 39 degrees, 59' W 157.94 feet to a point, a rebar set on the western most exterior boundary line of the Woodgate property; thence leaving the common line to Lot 42 and running with the western most exterior boundary line of Woodgate property, S 22 degrees 45' E 119.37 feet to the point of beginning and containing 24,555 square feet, more or less.

And being the same property conveyed unto the parties of the first part herein by deed of SIRVA Relocation, LLC., dated the _____ day of _____, 2014, 2014, to be recorded in the Office of the Clerk of the County Commission of Fayette County, West Virginia, simultaneously with this instrument.

There is excepted and reserved and not conveyed that certain out conveyance as is set out in the Office of the Clerk of the County Commission of Fayette County West Virginia in Deed Book 647, at Page 42 and more particularly described as follows:

BEGINNING at a 5/8 inch capped rebar set on the right-of-way of Lane Lane, said rebar also being a common corner to W. and A. Scott (DB 596/342, Plateau District Tax Map 14M, Parcel 102); thence through Scott, South 46 37' 52" West, a distance of 44.20 feet to a 5/8 inch capped rebar set; thence South

54 00' 57" West, a distance of 21.45 feet to a point, said point also being on the original boundary of E. Duncan (nee Domingues) (DB 592/732, Plateau district Tax Map 14M, Parcel 103); thence with Duncan, North 40 21' 56" East, a distance of 63.35 feet to a point on the aforementioned right-of-way; thence leaving dincan and with the right-of-way along a curve turning to the left having an acr length of 10.02', with a radius of 35.00' with a chord bearing of South 57 49' 48" East, and with a chord length of 9.99' to the Point of Beginning, having an area of 372 square feet, more or less, and more particularly set forth as Tract "A", on the attached plat entitled, "Plat Showing Tracts to be Exchanged by E. Duncan & W. & A. Scott Woodgate Subdivision March 19, 2009", prepared by Westlake, Inc.,

### TRACT II

BEGINNING at a rebar found, said rebar also being North 22 11' 47" West, a distance of 181.98 feet from a T-Rail found, said rebar also being North 22 06' 01" West, a distance of 119.47 feet from a rebar found, said rebar also being a common corner to E. Duncan (nee Domingues) (DB 592/732, Plateau district Tax Map 14M, Parcel 103), J. Gray (DB 636/458, Plateau District Tax Map 14M, Parcel 55) and W. and A. Scott (DB 596/342, Plateau District Tax Map 14M Parcel 102); thence leaving Scott and with Gray and Duncan, North 22 38' 28" West, a distance of 22.72 feet to a 5/8 inch capped rebar set; thence leaving Gray and through Duncan, North 54 00' 57" East, a distance of 85.77 feet to a point, said point also being on the original boundary of the aforementioned Scott; thence with Scott, south 4021' 56" West, a distance of 93.66 feet to the Point of beginning, having an area of 948 square feet, more or less, and more particularly set forth as Tract "B" on the attached plat entitled, "Plat Showing Tracts to be exchanged by E. Duncan & W. A. Scott Woodgate Subdivision March 19, 2009", prepared by Westlake, Inc.,

This instrument is made subject to all lawful restrictions, reservations, covenants and conditions, made and contained in prior deeds in the chain of title to the above described real estate.