**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

AMANDA HANSON, et al.,

        Plaintiffs,

v.                          CIVIL ACTION NO.   2:17-cv-03691

AMERIHOME MORTGAGE COMPANY, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Amerihome Mortgage Company, LLC's ("Amerihome"), Motion to Dismiss, (ECF No. 3). For the following reasons, Amerihome's motion is **GRANTED IN PART** and **DENIED IN PART**.

*I.*     *BACKGROUND*

On October 21, 2014, Plaintiffs, Amanda and Nicholas Hanson ("the Hansons"), entered into a home mortgage loan for $194,200 with Victorian Finance, LLC to purchase a home in Fayetteville, West Virginia. (ECF No. 1-1 at ¶ 5.) The Deed of Trust incorporates the HUD regulations and states that acceleration or foreclosure is not authorized unless in accordance with the HUD regulations. (*Id.* at ¶ 6.)

A month later, the servicing rights of the loan were transferred to Amerihome. (*Id.* at ¶ 7(a).) Amerihome designated LoanCare, LLC as its subservicer on the loan, but subsequently

replaced LoanCare with Cenlar FSB. (*Id.* at ¶ 7(b)–(c).) On October 12, 2016, Amerihome once again began servicing the Hansons' loan directly. (*Id.* at ¶ 8.)

Around February 2016, Mr. Hanson was laid off from his job and the Hansons began experiencing financial difficulties. (*Id.* at ¶ 9.) They continued making payments on the loan for several months until they could no longer afford to pay. (*Id.*) To avoid the risk of foreclosure, the Hansons contacted Amerihome's then subservicer, Cenlar, and inquired about their loss mitigation options. (*Id.* at ¶ 10.) Either Amerihome or Cenlar, the parties are unclear which, informed the Hansons that they could apply for loss mitigation and sent them an initial loss mitigation packet. (*Id.* at ¶ 10(a)–(b).) The Hansons completed this packet and sent it back to Amerihome. (*Id.* at ¶ 10(b).)

Mr. Hanson returned to work in November 2016 at a significantly decreased salary. (*Id.* at ¶ 11.) Because of the significantly decreased income, the Hansons still pursued the loss mitigation application. (*Id.* at ¶ 12(a).) When the Hansons inquired about their application, Amerihome informed them that their application contained missing information and sent the Hansons letters requesting the missing information. (*Id.*) The Hansons admit to receiving these letters and state that they responded to all of Amerihome's requests for the missing information. (*Id.* at ¶ 12(b).)

On February 15, 2017, Amerihome sent a final letter to the Hansons "discontinuing," but not denying, the loss mitigation process for lack of receiving timely information. (*Id.* at ¶ 14.) A month later, on March 4, 2017, the Hansons received a Notice of Trustee's sale for the property, scheduled for March 24, 2017. (*Id.* at ¶ 17.) However, the sale was cancelled after the Hansons notified the trustee of their issues with the loss mitigation process. (*Id.* at ¶ 15(b).)

On June 5, 2017, the Hansons filed this action against Amerihome and John Doe Holder in the Circuit Court of Fayette County, West Virginia. (ECF No. 4 at 3.) In their Complaint, the Hansons stated that they can now afford the regular monthly payments on the loan but that they cannot afford the arrears they allege accrued as a direct result of Amerihome's failure to timely evaluate their application for loss mitigation. (ECF No. 1-1 at ¶¶ 17–18.) The Hansons alleged three counts: (1) misrepresentations and unconscionable conduct in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), (2) breach of contract, and (3) tortious interference with a contract. (*See* ECF No. 1-1.)

Amerihome subsequently removed this action to this Court on July 24, 2017, (ECF No. 1), and filed this Motion to Dismiss all three of the counts alleged in the Complaint on July 27, 2017. (*See* ECF No. 3.) Specifically, Amerihome argued that the Hansons failed to state a claim under the WCCPA, to state a claim for breach of contract, and to state a claim for tortious interference with a contract. The Hansons responded to the motion on August 10, 2017, ECF No. 5), and Amerihome filed its reply on August 17, 2017. (ECF No. 7.) The Motion to Dismiss is fully briefed and ripe for adjudication.

## II. *LEGAL STANDARD*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

## III. DISCUSSION

### A. Count I—Misrepresentation and Unconscionable Conduct

Count I of the Hansons' complaint alleges that Amerihome violated sections 46A-2-127 and -128 of the WVCCPA. (ECF No. 1-1 at ¶ 21.) Specifically, the Hansons allege that Amerihome "made misrepresentations in connection with the collection of a debt in violation of West Virginia Code § 46A-2-127" and "engaged in unconscionable and unfair conduct in collection of the debt in violation of West Virginia Code § 46A-2-128" by directing its trustee to schedule a foreclosure sale despite representing to the Hansons that their loss mitigation process was still ongoing; misrepresenting the status of their loss mitigation application to them; and

failing to advise them about their rights to appeal a wrongful denial of assistance. (ECF No. 1-1 at ¶ 21(a)–(c).)

Amerihome seeks to dismiss this claim on the grounds that because these statutory sections apply to the debt collection process, the Hansons' allegations pertaining to misrepresentations occurring during the loss mitigation process do not fall under the purview of the statute. (ECF No. 4 at 4.) Amerihome further argues that, to the extent there were misrepresentations or omissions made during the debt collection process, those misrepresentations or omissions were not prohibited under these statutory sections. (*Id.*) Lastly, Amerihome argues that the Hansons fail to explain how foreclosure after a loan has defaulted is unconscionable under § 46A-2-128 of the WVCCPA. (*Id.*)

      i.    <u>§ 46A-2-127</u>

The Hansons argue that Amerihome violated this section by instructing the Hansons to supply significant financial information in order to be considered for loss mitigation and then, for approximately six months, asking them to provide further detailed information. The Hansons further state that "Amerihome's promise of assistance was illusory." (ECF No. 5 at 6.) Amerihome argues that this section does not apply to the loss mitigation process and, even if it did, Amerihome's conduct did not violate this section. (*See* ECF No. 4 at 4.)

W. Va. Code § 46A-2-127 provides that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." The statute provides, in relevant part, that the following constitute violations of this section:

(b) Any false representation that the debt collector has in his possession information or something of value for the consumer that is made to solicit or discover information about the consumer;

. . .

(d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding;

§ 46A-2-127(b) & (d). "Debt collection" is defined as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owned or due or alleged to be owed or due by a consumer." § 46A-2-122(c).

This Court addressed Defendant's contentions that this section of the statute does not apply to the loss mitigation process in *Koontz v. Wells Fargo*, No. 2:10-cv-00864, 2011 WL 1297519, at * 1 (S.D. W. Va. Mar. 31, 2011). There, the plaintiff alleged that the defendant, Wells Fargo, misrepresented that she was being considered for loan modification and that the trial modification that plaintiff undertook, at the suggestion of Wells Fargo, by paying a lower monthly payment was a ploy to obtain partial payment of the plaintiff's outstanding debt in violation of § 46A-2-127. *See id.* at *6. Similar to the present case, Wells Fargo first argued that the statute did not apply to misrepresentations not made in the process of debt collection activities. *Id.* This Court noted that Wells Fargo "wisely" abandoned this argument in its reply because the statute clearly applies to both misrepresentations made in the debt collection process and misrepresentations made to obtain customer information. *Id.* Wells Fargo further argued that neither of the plaintiff's allegations were made either in the debt collection process or in obtaining customer information. *Id.* This Court held the following:

[T]o the extent that the complaint goes on to allege that the $550–per–month trial modification was merely a ploy by Wells Fargo to obtain partial payment of Plaintiff's outstanding debt, it sets forth a claim pursuant to W. Va. Code § 46A–

2–127. In addition, to the extent that Plaintiff alleges Wells Fargo misrepresented that it would reconsider her for a loan modification, and thereby obtained financial information for a second modification application, the complaint adequately sets forth a claim pursuant to W. Va. Code § 46A–2–127. Both allegations are supported by facts adequate to meet the demands of Twombly and Iqbal, and the motion to dismiss Count II is therefore DENIED.

*Id.*

This Court again addressed this issue in *Ranson v. Bank of America, N.A.  See* No. 3:12-5616, 2013 WL 1077093, at *1 (S.D. W. Va. Mar. 14, 2013).   There, the plaintiff alleged that Bank of America violated § 46A-2-127 by doing the following:

(1) Defendant told him he qualified for loan modification and would receive one if he completed the requested financial information; (2) Defendant told him to stop making payments because it would interfere with the modification process, but in reality it increased the likelihood of foreclosure; (3) Defendant assured Plaintiff it would not foreclose on his home during the time the loan modification application was being processed; (4) Defendant ultimately represented it could not modify the loan because it was a VA loan; and (5) Defendant would not consider a short sale of the house and, instead, proceeded with foreclosure.

*Id.* at *9.   This Court, citing *Koontz*, held that "[a]llegations that a financial institution misrepresented to the borrower that it would reconsider a loan modification and, thereby, obtained additional financial information from the borrower, are sufficient to state a claim" under W. Va. Code § 46A-2-127.   *Id.*

Lastly, in *McNeely v. Wells Fargo Bank, N.A.*, the plaintiff alleged that, in reviewing the plaintiff's loan modification application, Wells Fargo could not locate certain documents and asked plaintiff to resubmit those documents.   *See* No. 2:13-cv-25114, 2014 WL 7005598, at *4 (S.D. W. Va. Dec. 10, 2014).   This Court held that unlike in *Koontz* and *Ranson*, plaintiff's allegations did not indicate that Wells Fargo made promises to plaintiff regarding the loan modification or about the possibility of foreclosure.   *Id.*   Therefore, the Court stated that it saw

"no facts to support a claim of 'fraudulent, deceptive, or misleading representation[s]' in an attempt to 'obtain information concerning consumers,' which is required to maintain a cause of action under § 46A-2-127" and found that plaintiff had failed to state a claim under § 46A-2-127. *Id.*

The present case is more similar to *McNeely* than *Koontz* or *Ranson*. Here, the only factual allegations the Hansons provide in support for their claim under § 46A-2-127 is that Amerihome repeatedly informed them that their loss mitigation application was incomplete and to resubmit more documents. (*See* ECF No. 1-1 at ¶ 12(a)–(c).) The Hansons do not allege any facts that suggest that Amerihome deceptively informed them that their application was incomplete in order to obtain further information from them. *See* 2014 WL 7005598, at *4. Furthermore, similar to *McNeely*, the Hansons do not allege any facts that suggest that Amerihome made any promises that the Hansons' loss mitigation application would be successful or that it would reconsider them for loss mitigation after the first application in an attempt to obtain additional financial information from the Hansons. *See* 2014 WL 7005598, at *4; *Koontz*, 2011 WL 1297519, at *6. Therefore, even assuming the factual allegations in the Complaint are true, this Court finds that the Hansons have not stated a claim upon which relief can be granted under § 46A-2-127. Insofar as Count I alleges a cause of action under W. Va. Code § 46A-2-127, it is **DISMISSED**.

ii. § 46A-2-128

The Hansons argue that Amerihome violated Section 46A-2-128 by representing to the Hansons that it was considering their loss mitigation application while simultaneously appointing a trustee to schedule a foreclosure sale, which, the Hansons state, constitutes debt collection

activity under the statute. (*See* ECF No. 5 at 6.) The Hansons further argue that whether this conduct was unconscionable is a question of fact and that they have adequately alleged facts for a reasonable trier of fact to find Amerihome's conduct unconscionable. (*See id.*)

Amerihome argues that the Hansons do not provide any authority as to why Amerihome's conduct was unconscionable or point to any prohibited conduct in the statute that Amerihome can be said to have violated. (*See* ECF No. 7 at 5.) Amerihome further argues that even if foreclosure is a debt collection activity, the Hansons fail to allege how foreclosure is unconscionable under this section of the statute and that Amerihome had the authority to foreclose on the home in the event of default in the Deed of Trust. (*See id.*) Lastly, Amerihome contends that unconscionability is a question of law that can be decided on a motion to dismiss. (*See id.*)

W. Va. Code § 46A-2-128 provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." The statute further provides specific examples of conduct that is deemed to be in violation of this section but states that these examples do not limit the general application of this section. *Id.*

First, this Court has previously found that actions surrounding foreclosure proceedings are attempts to collect debt. *See Ranson*, 2013 WL 1077093, at *9. Second, in *Pannell v. Green Tree Servicing*, this Court stated the following:

> [Section] 46A–2–128 expressly declare[s] that, "[w]ithout limiting the general application of the foregoing, the following conduct is deemed to violate this section" and each section goes on to list certain prohibited activities. *See*, *generally*, WVCCPA § 46A–2–124 (emphasis added). Thus, [Defendant's] contention that dismissal is appropriate because [Plaintiff] did not explicitly allege facts to support the finding of any of the specific prohibited activities of the respective WVCCPA sections is unsupported by the very language of the WVCCPA. The Court's review of [Plaintiff's] allegations, including

> incorporating the preceding paragraphs, reveals that Count IV contains allegations
> that state a claim to relief that is plausible on its face. Therefore, [Defendant's]
> request for dismissal as to Count IV is denied.

No. 5:14-cv-14198, 2014 WL 3361984, at *1, *7 (S.D. W. Va. July 8, 2014). Lastly, in

*Ranson*, this Court held that plaintiff's allegations that the defendant, a financial institution,

made misrepresentations regarding plaintiff's loan modification and foreclosure process were

sufficient to state a claim against defendant under this section of the WVCCPA. *See* 2013 WL

1077093, at *1, *9.

    To the extent that the Hansons allege in their Complaint that Amerihome's repeated

requests for information regarding their loss mitigation application violates this section of the

statute, this Court finds that those allegations, absent fraud or deception, do not constitute a claim

under 46A-2-128. *See McNeely*, 2014 WL 7005598, at *4 ("Moreover, repeated requests for

information with the purpose of processing a loan modification—absent fraud or

deception—does not constitute unfair or unconscionable debt collection giving rise to a claim

under § 46A–2–128.") However, the Hansons plead enough facts in their other allegations that

Amerihome scheduled the foreclosure sale during the loss mitigation process and failed to advise

them of their appeal rights for a jury to find that Amerihome violated this section of the statute.

(ECF No. 1-1 at ¶ 14–15.) Although this conduct may not be as egregious as the conduct

described in the above cited cases, Amerihome has not pointed the Court to any case law that

holds that these types of allegations cannot be plausible claims under § 46A–2–128. As such,

Count I will proceed insofar as it alleges a violation of W. Va. Code § 46A-2-128, and to that

extent, the motion is **DENIED**.

    *B. Count II—Breach of Contract*

In Count II of their Complaint, the Hansons assert a breach of contract claim against Amerihome.   (ECF No. 1-1 at ¶ 26(d).)   Specifically, the Hansons allege that Amerihome breached the Deed of Trust when it failed to evaluate their loss mitigation techniques before four full payments were due, failed to properly counsel them, failed to conduct a face-to-face interview with them within three months of default, failed to inform them in writing why they could not be provided assistance, and initiated foreclosure proceedings before all loss mitigation options were considered.   (*See id.*)   The Hansons further allege that Amerihome breached their duty of good faith when Amerihome unnecessarily prolonged the Hansons' loss mitigation process, failed to provide the Hansons with information on their loss mitigation options, and failed to consider specific options to minimize the Hansons' loss.   (*See id.* at ¶ 28(a)–(d).) Lastly, the Hansons point this Court to decisions outside of this district that state that mortgage servicers can be held liable for contractual breaches if the facts demonstrate there was a contract. (*See* ECF No. 5 at 8 (*citing Cortinas v. Nevada Housing*, No. 2:11-CV-01480, 2011 WL 6936340, at *5 (D. Nev. Dec. 30, 2011); *Tara Woods Ltd. P'ship v. Fanny Mae*, 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010)).)

Amerihome argues that the Hansons have failed to state a claim for breach of contract because Amerihome is not a party to the Deed of Trust and therefore cannot be sued for breach of the Deed of Trust.   (*See* ECF No. 4 at 6.)   Amerihome further asserts that it is the agent of John Doe Holder and that West Virginia law explicitly states that an agent is not personally bound to the contracts of its principal nor is an agent liable for the breaches of its principal. (ECF No. 7 at 10–11.)   To support its position, Amerihome points to cases from this Court that state that a non-party to a contract cannot be sued for breach of contract.   (*See also* ECF No. 7

at 8 (*citing Petty v. Countrywide Home Loans, Inc.*, No. 3:12-6677, 2013 WL 1837932, at *1, *10 (S.D. W. Va. May 1, 2013); *Green v. Select Portfolio Servicing, Inc.*, No. 5:08-cv-00198, 2008 WL 2622917, at *2 (S.D. W. Va. June 30, 2008)).)

West Virginia requires that a breach of contract claim demonstrate the following: (1) a contract between the parties; (2) the breach, or failure to comply with the contract; and (3) damages flowing from the breach. *Mullins v. GMAC Mortgage LLC*, No. 1:09CV704, 2011 WL 1298777, at *2 (S.D. W. Va. Mar. 31, 2011). Furthermore, this Court has held that, generally, one who is not party to a contract with another cannot have an action for breach of contract maintained against him. *See Rowe v. Aurora Commercial Corp.*, No. 5:13021369, 2014 WL 3810786, at *1, *10 (S.D. W. Va. Aug. 1, 2014).

The Eastern District of New York addressed similar breach of contract allegations against a loan servicer in *Kapsis v. American Home Mortg. Servicing Inc.* 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013). There, the plaintiff brought a breach of contract claim against the defendant loan servicer and asserted that the parties were in privity of contract because the servicing rights of the plaintiff's loan were transferred to the defendant. *Id.* The court found that this was not enough to establish a contractual relationship in order to maintain a breach of contract claim. *Id.* (citing *Pereira v. Ocwen Loan Servicing, LLC*, No. 11-cv-2672, 2012 WL 1381193, at *3 (E.D.N.Y. Apr. 18, 2012) (dismissing the breach of contract claim because "[t]he complaint does not allege that a contractual relationship ever existed between plaintiffs and Ocwen; at most, plaintiffs allege Ocwen became the servicer of their mortgage loan")). The Central District of California has similarly held that a contract to service a plaintiff's loan does not create contractual privity between the servicer and the plaintiff. *See Conder v. Home Sav. of Am.*, 680

F. Supp. 2d 1168, 1174 (C.D. Cal. 2010); *See also Rowe*, 2014 WL 3810786, at \*10 ("[Defendants] . . . are not parties to the contract, but merely agents of the obligation owner. As such, plaintiffs have no cause of action for breach of contract.").

Here, the Hansons' allegations are similar to those in *Kapsis*. *Cf.* 923 F. Supp. 2d at 451–52. Amerihome is not named in the Deed of Trust. (*See* ECF No. 5-1.) Furthermore, the Hansons do not allege any facts that show that they were in contractual privity with Amerihome. The Hansons simply state that the servicing rights of the loan were transferred to Amerihome around November 11, 2014, and then, again, after the servicing rights were subsequently transferred to two other companies, around October 14, 2016. (ECF No. 5 at 2.) They do not allege that Amerihome itself was a party to the contract in dispute. Therefore, this Court finds that Amerihome was not in privity of contract with the Hansons and thus cannot be sued for breach of contract.

The Hansons' alternative theory of recovery under this claim is that Amerihome is an agent of John Doe Holder, with whom they are in privity of contract, and, therefore, liability for any breach can be imputed to Amerihome. (*See* ECF No. 5 at 8.) However, under West Virginia law, "an agent . . . contracting for and on behalf of a principal known or disclosed to the person with whom the contract is made, is not personally bound by it, nor liable for breach, thereof, unless the credit extended to him or he has expressly bound himself by the contract in some form." *Martin-Evans v. Chesapeake Appalachia, LLC*, No. 5:17CV87, 2015 WL 5076992, at \*1, \*5 (N.D. W. Va. Aug. 27, 2015) (citing *Hurricane Milling Co. v. Steel & Payne Co.*, 99 S.E. 490, 491 (W. Va. 1919). Accordingly, Count II of the Complaint is **DISMISSED**.

C. *Count III—Tortious Interference with Contract By Amerihome*

Lastly, in Count III of their Complaint, the Hansons allege, in the alternative to Count II, that Amerihome is not a party to the contract and that Amerihome intentionally interfered with the mortgage loan contract. (ECF No. 1-1 at ¶¶ 31–35.) Specifically, the Hansons allege that Amerihome interfered with the Hansons' Deed of Trust by negligently prolonging the loss mitigation process, pursuing foreclosure during the pendency of the loss mitigation application, and by making representations regarding the loss mitigation process that dissuaded the Hansons from taking steps to make loan payments. (ECF No. 5 at 9.) Amerihome argues that the Hansons have failed to state a claim for tortious interference with contract because an agent cannot be charged with interfering with its principal's contract. (ECF No. 4 at 7.)

Under West Virginia law, to establish a prima facie case of tortious interference with contract, a plaintiff must show the following: "(1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside of that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008). Therefore, to maintain a tortious interference of contract claim, a plaintiff must plead that the defendant is not a party to the contract.

This Court has held that generally, an agent, although not a party to the contract, is not liable for tortious interference for interfering with the contract of its principal. *See Cavcon, Inc. v. Endress Hauser, Inc.*, 557 F. Supp. 2d 706, 725 (S.D. W. Va. 2008). The exception to this general rule is if the agent is acting outside of the scope of its employment. *See* 672 S.E.2d at 403; *see also* 557 F.Supp.2d at 726.

14

The District Court of the District of Columbia applied this general rule in *Parker v. BAC Home Loans Servicing LP*. 831 F. Supp. 2d 88 (D.D.C. 2011). There, the plaintiff alleged that its loan servicer interfered with the plaintiff's contract with his noteholder. *Id.* at 92. The court held, applying District of Columbia law, that "a party through its agents, cannot interfere with its own contract." *Id.* (citing *Langer v. George Wash. Univ.*, 498 F. Supp. 2d 196, 202 (D.D.C. 2007)). Therefore, the court found that the defendant, as an agent, "cannot have committed the tort of intentional interference with its own principal." *Id.* The court further held that the exception to this rule would apply if the agent was acting in its own interest and not in the interest of the principal. *Id.* The plaintiff in that case did plead facts to show that the defendant was acting in its own interest and thus fell under the exception. *Id.* at 93.

Here, the Hansons assert in the alternative to their breach of contract argument that Amerihome is not a party to the contract in dispute, but instead is an agent of John Doe Holder. (*See* ECF No. 5 at 10; ECF No. 4 at 8.) Thus, the general rule that an agent cannot be liable for tortious interference with its principal's contract applies unless the Hansons plead facts that Amerihome was acting outside the scope with its employment with John Doe Holder. The Hansons' Complaint is void of such facts. Therefore, Count III of the Hansons' Complaint is **DISMISSED**.

## IV.     CONCLUSION

For the foregoing reasons, Amerihome's Motion to Dismiss, (ECF No. 3), is **GRANTED IN PART** as to Count I, insofar as it requests dismissal of the claim brought under W. Va. Code § 46A-2-127, Count II, and Count III, and **DENIED IN PART** as to Count I insofar as it

requests dismissal of the claim brought under W. Va. Code § 46A-2-128.   Thus, this case will proceed only on the allegations in Count I that Amerihome violated W. Va. Code § 46A-2-128.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      December 28, 2017

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE