IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

AMANDA HANSON, et al.,

            Plaintiffs,

v.                                    CIVIL ACTION NO. 2:17-cv-03691

AMERIHOME MORTGAGE COMPANY, LLC, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Amerihome Mortgage Company, LLC's ("Amerihome") motion for summary judgment. (ECF No. 29.) For the reasons discussed herein, the Court **GRANTS** Amerihome's motion. (ECF No. 29.)

*I.    BACKGROUND*

This case arises out of a dispute between Plaintiffs, Amanda and Nicholas Hanson ("the Hansons"), and their loan servicer, Amerihome, regarding Amerihome's institution of foreclosure proceedings on the Hansons' home. (*See* ECF No. 1-1.) The home was ultimately not foreclosed upon. (ECF No. 30 at 1.) The complete factual background of this case is set forth in detail in this Court's Memorandum Opinion and Order on Amerihome's motion to dismiss. (*See* ECF No. 13.) Thus, that discussion need not be repeated here.

In their Complaint, the Hansons allege claims for violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA") (Count I), breach of contract (Count II), and tortious

interference with a contract (Count III). (*See id.*) On December 28, 2017, this Court granted in part Amerihome's motion to dismiss and dismissed all counts in the Hansons' Complaint except Count I insofar as it alleges that Amerihome violated the WVCCPA by representing to the Hansons' that the loss mitigation process was ongoing while continuing to pursue foreclosure and insofar as it alleges that Amerihome failed to advise the Hansons of their right to appeal a denial of assistance. (*See* ECF No. 13 at 10.)

On August 21, 2018, Amerihome filed the present motion for summary judgment. (ECF No. 29.) The Hansons timely responded to the motion, (ECF No. 33), and Amerihome timely replied. (ECF No. 34.) As such, the motion is fully briefed and ripe for adjudication.

## II.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various

documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 247–48.

## III. DISCUSSION

Amerihome requests summary judgment on the remaining count of the Hansons' Complaint which, as stated above, alleges that Amerihome violated the WVCCPA by continuing the foreclosure process while representing to the Hansons that loss mitigation was ongoing and by failing to advise the Hansons on their right to appeal a wrongful denial of assistance. (*See* ECF No. 30 at 1–3.) The Court will address these allegations separately.

A.  *Claim Regarding Amerihome's Alleged Misrepresentations*

In Count I of their Complaint, the Hansons allege that Amerihome violated § 46A-2-128 of the WVCCPA by "[d]irecting its appointed trustee to proceed with scheduling a foreclosure sale despite representing to [the Hansons] that the loss mitigation process was ongoing . . . ." (ECF No. 1-1 at ¶ 21(a).) Amerihome argues that it did not violate this section because the evidentiary record clearly shows that Amerihome repeatedly informed the Hansons that the foreclosure process would continue until Amerihome received a completed loss mitigation application, which Amerihome never received. (*See* ECF No. 30 at 6.) Further, Amerihome argues that it was not

required under federal law to stop foreclosure proceedings until a completed loss mitigation application was submitted. (*See* ECF No. 30 at 7.)

Section 46A-2-128 of the WVCCPA provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128. The statute further provides specific examples of conduct that is deemed to be in violation of this section, but states that these examples do not limit the general application of this section. *Id.* Further, this Court previously noted that this section applies to the loan modification process and the foreclosure process. (*See* ECF No. 13 at 9–10 (citing *Pannell v. Green Tree Servicing*, No. 5:14-cv-14198, 2014 WL 3361984, at *7 (S.D. W. Va. July 8, 2014)).)

Here, the Hansons do not direct the Court to one of the specified violations, but instead rely on the general applicability of the section which precludes the use of "unreasonable or unconscionable means" to collect a debt. The Hansons' claim is that Amerihome misrepresented that foreclosure proceedings would be stalled pending a determination on the Hansons' loss mitigation application. (*See* ECF No. 33 at 6–7.) However, in letters dated between April 11, 2016 and March 24, 2017 Amerihome explicitly states that the foreclosure process would continue until Amerihome received a completed loss mitigation application. (*See* ECF No. 29-6.) Additionally, during his deposition, Nicholas Hanson testified that it was his understanding that the foreclosure process would not be stopped until Amerihome received the completed loss mitigation application. (ECF No. 29-8 at 20–21, 53 (Nicholas Hanson Dep.).) As discussed more fully below, the evidentiary record shows that Amerihome never received a completed loss mitigation application. The Hansons were repeatedly informed of this fact. As Amerihome was clear that foreclosure would continue until the loss mitigation application was complete, the Court

cannot find that Amerihome made misrepresentations regarding the stay of foreclosure during the loss mitigation process.

As part of the loss mitigation application, Amerihome requested that the Hansons submit a complete, signed copy of the Uniform Borrowers Assistance Form ("UBAF"), current paystubs, and a hardship letter signed by both borrowers. (ECF No. 30 at 4.) In letters dated between December 6, 2016 and January 30, 2017, Amerihome informed the Hansons that information was missing from their application, and, thus, their loss mitigation application would be deemed incomplete pending the receipt of this information. (*See* ECF No. 29-5.) The Hansons submitted some of this information, but, at the very least, the record shows the Hansons did not submit the requested hardship letter. (*See* ECF No. 33 at 7.)

In response to Amerihome's motion, the Hansons first assert that they submitted the UBAF, "hardship information", and the required paystubs by Amerihome's requested deadline of February 15, 2017. (*See* ECF No. 33 at 7.) In support of their assertion, the Hansons attached the completed UBAF to their response which appears to include a hardship section, (*see* ECF No. 33-3 at 5–6), Nicholas Hansons' paystubs, and Amanda Hansons' paystubs. However, the Hansons have not submitted any evidence showing that they submitted a hardship letter despite several letters requesting they do so. (*See, e.g.*, ECF No. 29-6 at 25, 27.). In fact, the letter that the Hansons attach as evidence to show that the Hansons complied with Amerihome's request to submit Amanda Hansons' paystubs, also contains a request for a hardship letter from the Hansons. (*See* ECF No. 33-5 at 1.) Further, in a telephone call on February 15, 2017, an Amerihome

representative informed Nicholas Hansons that he needed to submit a separate hardship letter.[1] (*See* ECF No. 34-1 at 4:34-:51, 7:05; 9:30-:32.)

The Hansons next assert that the hardship letter was not required pursuant to Amerihome's UBAF form which states that no additional documentation is required when the borrower indicates that his or her hardship is because of unemployment. (ECF No. 33 at 7.) However, as part of the UBAF form, the borrower signs a statement acknowledging that the "[s]ervicer, owner or guarantor of the [borrower's] mortgage, their agent(s), or any authorized third party" may require the borrower to provide additional documentation. (*See* ECF No. 33-2 at 10.) The borrower further agrees to provide all requested documents. (*See id.*) Therefore, despite what the Hansons may have mistakenly believed regarding the hardship letter requirement, in signing the UBAF, the Hansons agreed to provide any requested additional documents even if the document was not initially required. Amerihome clearly requested this additional hardship letter; yet, the Hansons never provided it. Thus, although the Court acknowledges that this may have been a difficult process, the undisputed evidence shows that the Hansons did not submit a completed loss mitigation application. *See, e.g.*, 12 C.F.R. § 1024.41(b)(1) (defining a completed loss mitigation application as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower.")

---

[1] The Hansons assert that, based on the internal account notes regarding the February 15, 2017 call, Amerihome represented to the Hansons that Amerihome had received the missing documents and that foreclosure would not continue during review of the application. (*See* ECF No. 33 at 7–8.) However, a review of the call reveals that at several points during the call, Amerihome's representative clearly states that the foreclosure process was ongoing because the loss mitigation application incomplete. (ECF No. 34-1 at 3:50–4:11; 15:21–:40.)

The Hansons further argue that federal law required Amerihome to stop foreclosure proceedings while considering the Hansons loss mitigation application.[2] (*Id.* at 8.) However, pursuant to federal regulations, Amerihome was not required to stop foreclosure proceedings until Amerihome received a complete loss mitigation application. *See* 12 C.F.R. § 1024.41(g) ("If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale . . . ." (emphasis added)); *see also Adt. v. Nationstar Mortg. LLC*, No. 3:17-cv-162, 2018 WL 159078, at *5 n. 19 (E.D. Va. Mar. 30, 2018) (stating 12 C.F.R. § 1024.41(g) applies when a borrower has submitted a complete loss mitigation application); *Weisheit v. Rosenberg & Assocs., LLC*, No. 17-cv-0823, 2017 WL 5478355, at *4 (D. Md. Nov. 15, 2017) (stating that servicer is prohibited from moving towards foreclosure while a completed loss mitigation application is pending under 12 C.F.R. § 1024.41(g)). As the Hansons never submitted a completed loss mitigation application, Amerihome was not required to stay foreclosure proceedings.

Thus, viewing the facts in the light most favorable to the Hansons, the evidence shows that Amerihome did not make any misrepresentations regarding the status of the Hansons' loss

---

[2] The Hansons lastly appear to argue that Amerihome acted unconscionably when by allegedly violating guidelines promulgated by the United States Department of Housing and Urban Development ("HUD") contained in Mortgagee Letter 2013-40 when it continued foreclosure proceedings after the Hansons requested loss mitigation. (*See* ECF No. 33 at 10–11.) The only remaining count of the Hansons' Complaint is whether Amerihome violated the WVCCPA by pursuing foreclosure during the loss mitigation process and failing to advice the Hansons of their appeal right. The Court is unsure how the alleged violation of HUD guidelines falls under the remaining WVCCPA claims. To the extent the Hansons use the HUD guidelines to argue Amerihome acted unconscionably, the Court does not find that argument persuasive in light of the Court's finding that Amerihome satisfied the federal regulation that is the subject of the above guideline. *See, e.g.*, *Nahigian v. Juno-Loudoun, LLC*, 677 F.3d 579, 587 (4th Cir. 2012) ("HUD guidelines are not regulations issued with the intent that they act as binding law . . . .")

mitigation application or the status of the foreclosure process. The Hansons fail to direct the Court to any record evidence that raises a genuine issue of material fact as to whether Amerihome misrepresented that the Hansons' loss mitigation application was complete and/or that Amerihome misrepresented that the foreclosure process would be stayed in light of the evidence provided by Amerihome. Further, in light of Amerihome's above compliance with the federal regulation concerning foreclosure during loss mitigation process, the Court cannot find that Amerihome acted unreasonably in continuing foreclosure proceedings pending receipt of a completed loss mitigation application. Accordingly, Amerihome is entitled to summary judgment as to the Hansons' allegation that that Amerihome violated the WVCCPA by misrepresenting that the foreclosure process would be stayed during the loss mitigation process.

B.  *Claim Regarding Amerihome's Alleged Failure to Advise on the Right to Appeal*

In Count I of their Complaint, the Hansons also allege that Amerihome failed to apprise the Hansons of their right to appeal a wrongful denial of assistance in violation of § 46A-2-128 of the WVCCPA. (ECF No. 1-1 at ¶ 21(c).) In their motion, Amerihome argues that the Hansons were not entitled to be notified of their right to appeal because the Hansons never submitted a complete loss mitigation application and thus the Hansons had no right to appeal. (*See* ECF No. 34 at 3–5.) Amerihome further argues that its decision to discontinue the loss mitigation process was not an appealable final decision. (*See id.*)

As stated above, § 46A-2-128 of the WVCCPA provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128. Further, the Hansons direct the Court to 12 C.F.R. § 1024.41(c)(1)(ii) which provides that, after a complete loss mitigation is received, a loan servicer shall do the following:

8

> Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(1)(ii). Further, § 1024.41(h)(1) provides the following:

> Appeal process required for loan modification denials. If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

§ 1024.41(h)(1).

In response, the Hansons continue to assert that they submitted a complete loss mitigation application and thus were entitled to be appraised of their right to appeal. (ECF No. 33 at 9.) In support of this contention, the Hansons direct the Court to the same evidence discussed above. (*See id.*) The Hansons further argue that the Amerihome's decision to discontinue the loss mitigation process clearly a denial. (*Id.* at 10.)

The above regulations plainly state the notice of appeal is available only after the servicer receives a completed loss mitigation application. As stated above a completed loss mitigation application is one in which the "servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." § 1024.41(b)(1). Here, as discussed more fully above, the Hansons did not submit a completed loss mitigation application. *See supra* Part III.A. As such, Amerihome was not required to send the Hansons notification that they had a right to appeal. Thus, in light of

9

Amerihome's compliance with the above federal regulation, the Court finds that Amerihome's failure to advise the Hansons of the right to appeal was not unfair or unconscionable. Further, as discussed more fully above, the Hansons have not provided any evidence that their loss mitigation application was complete. Accordingly, Amerihome is entitled to summary judgment on the Hansons' allegation that Amerihome failed to advise them of their right to appeal.

## IV. CONCLUSION

For the reasons discussed more fully above, the Court **GRANTS** Amerihome's motion for summary judgment. (ECF No. 29.) The Court **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 13, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE